# United States Court of Appeals
## For the First Circuit

No. 17-1797

UNITED STATES OF AMERICA,

Appellee,

v.

RICKY SIROIS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Kayatta, and Barron,
Circuit Judges.

Michelle Menken and The Law Office of Michelle Menken on brief for appellant.

Julia M. Lipez, Assistant United States Attorney, and Halsey B. Frank, United States Attorney, on brief for appellee.

August 6, 2018

**KAYATTA**, **Circuit Judge**.  After his release from federal custody following a drug trafficking conviction, Ricky Sirois failed three drug tests and pleaded guilty to felony drug possession in state court.  Concluding that this conduct violated Sirois's conditions of supervised release, the district court revoked his supervised release and committed him to twenty-four months' imprisonment.  On appeal, Sirois contends that because his drug addiction is a disease, sentencing him to a term of imprisonment for manifesting a condition of his disease constitutes cruel and unusual punishment in violation of the Eighth Amendment.  Sirois also challenges the substantive reasonableness of his sentence.  For the following reasons, we affirm.

## I.

Sirois has struggled with substance abuse for most of his life.  He suffered severe physical and emotional trauma at an early age, and, in his teenage years, began using drugs.  In the ensuing decades, Sirois accumulated numerous run-ins with the law.  The facts of this case revolve around a few such encounters.

In November of 2011, a grand jury indicted Sirois on drug trafficking charges stemming from his participation in an oxycodone distribution ring in central and southern Maine.  Sirois pleaded guilty, and the district court sentenced Sirois to forty-eight months' imprisonment, followed by three years of supervised release.  As part of the conditions of his supervised release, the

district court required that Sirois not commit any crime, specifically prohibited him from using or possessing controlled substances, and required that he submit to drug testing.

Sirois served his time in prison and commenced his term of supervised release on June 1, 2015. With but minor blemishes, this post-incarceration period appears to have begun smoothly. Sirois rented a room, communicated with his probation officer, and found legitimate sources of income. He also took steps to address his substance abuse. Sirois attended Alcoholics Anonymous meetings, developed a strong relationship with his sponsor, and attempted to obtain a prescription for Subutex to manage his opiate addiction. During this first year, Sirois passed his required drug tests.

Approximately a year after his release, Sirois faltered. On May 18, 2016, his drug test turned up positive for cocaine, which he admitted using. In September of the same year, Sirois had a long-awaited foot surgery. The doctor prescribed hydromorphone, an opioid, to manage pain. Sirois does not appear to have abused his prescription; a pill count conducted by his probation officer detected no issues, and his doctor then tapered the prescription.

Not long after, however, Sirois renewed the behavior that the terms of his release prohibited. Twice, in February and April of 2017, Sirois's drug tests detected the presence of cocaine

or marijuana. Random home searches revealed his renewed association with other drug users. Sirois appeared to turn antagonistic to drug treatment, calling his drug testing "bullshit" and declaring that he would rather go back to jail than engage in substance abuse treatment, although he did reluctantly agree to complete a substance abuse assessment.

This downward spiral culminated on May 24, 2017, when Waterville, Maine police discovered Sirois, during a traffic stop, in possession of a crack pipe, hypodermic needles, marijuana, crack cocaine, and heroin. Sirois pleaded guilty to one count of unlawful possession of heroin, a Class C felony under Maine state law, and received a sentence of fifty-nine days in jail.

Sirois's state drug conviction and failed drug tests led the probation office to seek the revocation of his supervised release. The Revocation Report calculated, and Sirois did not then and does not now dispute, that his guidelines sentencing range extended from twenty-one to twenty-four months' imprisonment.

At the revocation hearing, conducted by the same judge who had originally sentenced Sirois, Sirois admitted the charged violations. As to his sentence, he requested only a short period of incarceration -- ninety days -- to be followed by drug addiction treatment, rather than a more significant term of imprisonment. The district court did not grant his request. In sentencing Sirois, the district court relied on, among other things, Sirois's

association with other drug users and his negative attitude toward drug treatment.  The court observed that it had previously given Sirois "another chance" to set his life back on track through the structure of probation conditions, but that Sirois had instead "run the string on the federal system."  The court also criticized Sirois's decision to apply for disability benefits while performing physical labor.  It concluded that supervised release had not worked for Sirois and adopted the government's recommendation of twenty-four months' imprisonment.  The court did not impose any additional supervised release following Sirois's term of incarceration.  Sirois now appeals this sentence.

## II.

### A.

Sirois first contends that his sentence violates the Eighth Amendment's prohibition of cruel and unusual punishment.  In his briefing on appeal, he marshals a body of scientific literature to demonstrate what he describes as the "modern" scientific consensus that drug addiction is a disease for which prison is poor treatment.

But, as Sirois acknowledges, he did not make this argument below, either before or at sentencing.  Nor did he present the district court with the scientific literature upon which he principally bases his Eighth Amendment challenge.  We therefore review for plain error only.  See United States v. Blodgett, 872

F.3d 66, 71 (1st Cir. 2017). Under this standard of review, Sirois, to prevail, must show that (1) an error occurred (2) that was clear or obvious, and not only (3) affected his substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of the judicial proceeding. See United States v. Paz-Alvarez, 799 F.3d 12, 27 n.14 (1st Cir. 2015).

Sirois also includes in his reply brief on appeal several unexplained descriptions of his Eighth Amendment argument as a challenge to "the denial of any treatment and imposition of a term of incarceration." If Sirois intends these descriptions to raise a challenge to the denial of treatment during a drug-addicted defendant's term of incarceration -- as opposed to the imposition of incarceration itself -- such a challenge would be waived for lack of any fair development in Sirois's opening brief. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

To persuade us that sentencing him to a term of imprisonment clearly violated the Eighth Amendment, Sirois argues that the Amendment "categorically" precludes incarceration for his use of illegal drugs because that use is compelled by his addiction, which is a disease. To support this argument he points to a trio of Supreme Court decisions. See Graham v. Florida, 560 U.S. 48 (2010); Powell v. Texas, 392 U.S. 514 (1968); Robinson v. California, 370 U.S. 660 (1962). Application of those opinions, he says, to the learning manifest in the scientific literature on

- 6 -

drug addiction should reject incarceration as a constitutionally accepted option for his violations of the terms of his release.

Sirois relies on Graham for its recognition and extension of the proposition that some types of punishment are categorically prohibited for some types of individuals or behavior. See Graham, 560 U.S. at 60. Graham does recognize that a form of punishment -- capital punishment -- is categorically precluded for those who: committed non-homicide crimes against individuals, Kennedy v. Louisiana, 554 U.S. 407, 437-38 (2008); committed their crimes as juveniles, Roper v. Simmons, 543 U.S. 551, 578 (2005); or have an intellectual disability, Atkins v. Virginia, 536 U.S. 304, 321 (2002). See Graham, 560 U.S. at 60-61. It is also correct that Graham extended this line of cases beyond the death penalty to invalidate categorically the imposition of a life without parole sentence on a juvenile offender for a non-homicide crime. Id. at 61-62, 82. In so doing, the Court considered two factors evident in this line of cases: (1) objective indicia of a national consensus against the sentencing practice, and (2) the Court's own independent judgment about whether the practice at issue violated the Constitution, guided by the text, history, purpose, and case law of the Eighth Amendment. Id. at 61. Sirois argues that this same approach supports his argument.

The extrapolation Sirois would have us make in order to find that Graham's mode of analysis would ultimately lead to the conclusion that Sirois's sentence was unconstitutional is quite a leap, certainly too far to allow any finding that the district court committed a clear error of law. Sirois does not argue, nor could he, that Graham controls the outcome of his appeal. Graham and its predecessors address the extreme penalties of death and life incarceration, the latter of which Graham "likened" to the former. See Miller v. Alabama, 567 U.S. 460, 470 (2012). Rather, Sirois employs Graham's "framework" to build his argument. But Graham and its predecessors do not mention the subjects of compulsion and effectiveness that provide several of the key building blocks upon which Sirois relies in challenging his incarceration. And Sirois points to no case bridging this gap. As Sirois acknowledges, we generally hold that a defendant cannot show plain error absent clear and binding precedent. See, e.g., United States v. Marcano, 525 F.3d 72, 74 (1st Cir. 2008) (per curiam).

Sirois does point to Justice White's concurrence in Powell, 392 U.S. at 548, to support his argument. In Powell, a majority of the Supreme Court concluded that a chronic alcoholic's conviction for public drunkenness did not violate the Eighth Amendment, distinguishing Robinson, which the Court had decided six years earlier. Robinson held that the Eighth Amendment did

- 8 -

not permit the imposition of a criminal sanction based on an individual's status as a narcotics addict. 370 U.S. at 667. A four-justice plurality in Powell read Robinson as limited to status crimes. 392 U.S. at 532. The public drunkenness statute at issue in Powell, on the other hand, imposed a criminal sanction "for public behavior" rather than "mere status." Id. Justice White concurred in the judgment only. He wrote: "If it cannot be a crime to have an irresistible compulsion to use narcotics, I do not see how it can constitutionally be a crime to yield to such a compulsion." Id. at 548 (White, J., concurring in the judgment) (internal citations omitted).

Justice White's Powell concurrence is both good news and bad news for Sirois. On the plus side, it greatly closes the extrapolation gap by expressing skepticism that the compulsive use of narcotics can even be a crime. But on the other hand, it is only a concurring opinion. Even worse, it is one that has yet to gain any apparent relevant traction, as Sirois is unable to point us to any federal court of appeals case in the fifty years since the Court decided Powell and Robinson that has either interpreted those cases to hold that the Eighth Amendment proscribes criminal punishment for conduct that results from narcotic addiction, or has extended their reasoning to this effect. Whatever Powell holds, it does not clearly establish a prohibition on punishing an individual, even an addict, for possessing or using narcotics.

See United States v. Moore, 486 F.2d 1139, 1142 (D.C. Cir. 1973) (characterizing such an interpretation as "an amplification and extrapolation of the Supreme Court's interpretation of the Eighth Amendment advanced in the admittedly confused and divergent opinions in Robinson v. California and Powell v. Texas"); id. at 1150 (noting that "there is definitely no Supreme Court holding" of addiction as a defense). And, unlike Powell and Robinson, Sirois originally committed a crime that he does not claim was compelled by his addiction in any relevant manner. As a consequence of his failure to comply with the terms of probation, he must endure the prison sentence to which his original crime subjected him.

We cannot ignore the reality that drug-addicted defendants are routinely incarcerated for drug use and possession. Whether this practice is good policy is not the question before us. Rather, our inquiry is limited to deciding whether it is "clear or obvious" that the practice is unconstitutional. Given the state of controlling case law, the answer to that question must be no.

**B.**

As a fallback, Sirois contends that his two-year sentence is substantively unreasonable. Sirois again argues that science, empirical data, and the facts of his case undermine the reasonableness of the sentence imposed by the district court.

- 10 -

Incarcerating drug addicts for drug offenses, Sirois says, runs counter to an existing effort to combat the opioid crisis through treatment alternatives. Sirois does not challenge the procedural validity of his sentence.

We recently pointed out that the standard of review for an unpreserved argument of substantive reasonableness is "unsettled." United States v. Azor, 881 F.3d 1, 13 (1st Cir. 2017); see also United States v. Tanco-Pizarro, 892 F.3d 472, 484 (1st Cir. 2018) (Thompson, J., concurring) (discussing the applicable standard of review). Sirois also maintains that he did, in fact, preserve his argument, a statement the government disputes. But even if we review for abuse of discretion -- the more defendant-friendly standard, applicable to a preserved claim of error -- we find no basis to question the reasonableness of Sirois's sentence here. See Tanco-Pizarro, 892 F.3d at 483 (taking a similar approach).

"[T]he linchpin of a substantively reasonable sentence is a plausible sentencing rationale and a defensible result." United States v. Ayala-Vazquez, 751 F.3d 1, 32 (1st Cir. 2014) (alteration in original) (quoting United States v. Pol-Flores, 644 F.3d 1, 4-5 (1st Cir. 2011)). Although a defendant faces a "burdensome task" challenging a sentence for substantive unreasonableness in any case, that task is even more difficult when, as here, the sentence falls within the guidelines range.

- 11 -

United States v. Rivera-Clemente, 813 F.3d 43, 52-53 (1st Cir. 2016) (citation omitted).  Such a defendant "must adduce fairly powerful mitigating reasons and persuade us that the district court was unreasonable in balancing pros and cons despite the latitude implicit in saying that a sentence must be reasonable."  Id. (quoting United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011)).

Quite simply, Sirois has not met that burden here.  In announcing Sirois's revocation and sentence, the district court detailed its reasons extensively.  We have reviewed the district court's recitation of the facts in light of Sirois's arguments, and see no error.  And despite Sirois's marshalling of scientific literature, nothing in our precedent compels the conclusion that a district court does not have the discretion to impose a sentence of incarceration when a defendant on supervised release -- whether or not addicted to drugs -- is subsequently found to have committed multiple violations of those terms, as chronicled above.

## III.

For the foregoing reasons, we affirm the judgment of the district court.